IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
JULEE JOANN DETHLEFS,          )
                               )
          Plaintiff,           )        7:14CV5005
                               )
     v.                        )
                               )
CAROLYN W. COLVIN, Acting      )        MEMORANDUM OPINION
Commissioner of the Social     )
Security Administration,       )
                               )
          Defendant.           )
_____)
```

This matter is before the Court on the appeal of plaintiff, Julee Dethlefs ("Dethlefs"), of a final decision by the Acting Commissioner of the Social Security Administration ("SSA") denying Dethlefs' application for disability benefits. The Court finds that the decision of the Administrative Law Judge ("ALJ") should be affirmed.

## PROCEDURAL BACKGROUND

On July 6, 2011, Dethlefs filed an application for disability insurance benefits (Tr. 11). On October 5, 2011, the application was initially denied (*Id.*). On January 10, 2012, the application was then denied on reconsideration (*Id.*). On March 20, 2013, the ALJ held a video hearing with Dethlefs (Tr. 23). On April 26, 2013, the ALJ found that Dethlefs was not under a "disability" as defined in the Social Security Act (the "Act") (Tr. 13-18). On March 21, 2014, the Appeals Council of the SSA

denied Dethlefs' request for review (Tr. 1).  On May 19, 2014, Dethlefs timely filed this appeal(Filing No. 1; *see* 42 U.S.C. § 405(g)).  The Court now reviews the ALJ's decision, which stands as the Commissioner's final decision.

### FACTUAL BACKGROUND

Dethlefs was a forty-seven-year-old woman on her alleged onset date, November 1, 2010, and held a general educational development certificate (Tr. 52).  Dethlefs alleges disability due to "facial pain, headache, neuralgia, fatigue," and neck pain (Filing No. 1, at 3, ¶6).

### Prior to November 1, 2010

Dethlefs' pain stems from a car collision on June 7, 1999.  In the collision, Dethlefs sustained injuries to the mid-third of her face (Tr. 218).  In September 2002, Dethlefs received a frontal cranioplasty as treatment for ongoing discomfort in the region (Tr. 272).

In March 2004, Dethlefs complained to Louise E. Kleager, M.D. ("Dr. Kleager"), that her nose felt swollen (Tr. 322).  Dr. Kleager noted Dethlefs had difficulty breathing through the right side, but the doctor observed no visible swelling and patent airways on both sides (*Id.*).  Dr. Kleager indicated Dethlefs complained of some pain around her right eye despite normal and "virtually unremarkable" examinations (Tr.

-2-

322).  The following month of April, Dr. Kleager noted, after reviewing scans of Dethlefs' sinuses, the scans were excellent and showed no evidence of sinusitis (*Id.*).  No evidence showed air around the cranioplasty (*Id.*).  Dr. Kleager noted that the source of Dethlefs' chronic frontal headaches was not secondary to infection, but presumably post-traumatic in origin (*Id.*).

On May 7, 2007, Roger Simpson, M.D. ("Dr. Simpson"), performed sinus surgery on Dethlefs (Tr. 334-38).  Approximately two weeks later, Dr. Simpson noted Dethlefs was doing well (Tr. 333).  On May 23, 2005, Advanced Practice Registered Nurse Cynthia Gilmet, D.N.P. ("Dr. Gilmet"), noted Dethlefs complained of experiencing headaches once a week to once a fortnight (Tr. 275).  Dethlefs reported fatigue and denied any visual changes (*Id.*).  Dethlefs reported some difficulties breathing at night but denied shortness of breath during the day (*Id.*).  Dethlefs denied any increase in symptoms (*Id.*).

In July 2007, Dethlefs reported to Dr. Simpson that she felt great, was having no headaches, and was breathing better (Tr. 330).  Dethlefs expressed no other complaints (Tr. 330).  Dr. Simpson noted that Dethlefs' deviated nasal septum and sinusitis had resolved (Tr. 330-31).

On December 15, 2009, Dethlefs told Dr. Gilmet that she had been taking her husband's Meloxicam, which had significantly

-3-

helped her headaches (Tr. 280).  Dr. Gilmet provided Dethlefs
with her own prescription for Meloxicam (Tr. 280).

On June 10, 2010, Dethlefs complained to James Plate,
M.D. ("Dr. Plate"), about pain in the frontal area of the plastic
plate in her forehead (Tr. 280).  Dr. Plate posited that Dethlefs
had a "little bit of frontal sinus" due to barometric pressure
changes aggravated by plaintiff's smoking (*Id.*).  This was the
last examination prior to Dethlefs' alleged onset date:  November
1, 2010.

**Following November 1, 2010**

On August 4, 2011, Dethlefs sought chiropractic
treatment from Dale Wee, D.C., ("Dr. Wee") with complaints of
headaches and neck pain (Tr. 325-26).  Dr. Wee performed manual
chiropractic adjustments (Tr. 325).  On November 3, 2011, Dr. Wee
wrote a To-Whom-It-May-Concern letter, stating that he had been
performing chiropractic adjustments on Dethlefs and he
recommended future treatment on an "as needed" basis (Tr. 323).
On February 28, 2012, Dr. Wee noted that Dethlefs was in a relief
phase of care (Tr. 348).

On August 22, 2011, David Lindley, M.D. ("Dr.
Lindley"), performed a consultative examination on Dethlefs (Tr.
289-93).  Dr. Lindley noted that Dethlefs' nose was unremarkable
(Tr. 291).  He observed that Dethlefs was unable to raise her

-4-

eyebrows properly and Dethlefs reported double vision while following Dr. Lindley's finger to the extremities on the right (Tr. 292).  Dethlefs had bilateral, reduced sensation on her forehead and upper face (*Id.*).  The remainder of Dethlefs' cranial nerves were unremarkable (*Id.*).  Dethlefs had normal range of motion in her extremities (*Id.*).  Dethlefs had a normal peripheral nerve system (*Id.*).  Dr. Lindley diagnosed Dethlefs with olfactory nerve damage, smell and taste issues, and migraines (*Id.*).  Dr. Lindley opined that Dethlefs had significant disabilities since the motor vehicle accident where she is unable to get around other than avoidance, which resulted in an inability to leave the house to go shopping, or to family gatherings, or to take part in any significant work place activity (*Id.*).

On October 5, 2011, Arthur Weaver, D.O. ("Dr. Weaver") and State agency physician, completed a physical RFC assessment on Dethlefs (Tr. 296-304).  Dr. Weaver opined that Dethlefs had no exertional, postural, manipulative, or visual limitations (Tr. 297-99).  He also opined that Dethlefs should avoid concentrated exposure to extreme heat and moderate exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 300).  On January 5, 2012, another State agency physician, Glen Knosp, M.D., affirmed Dr. Weaver's assessment (Tr. 311-12).

-5-

## ADMINISTRATIVE HEARING

On March 20, 2013, the ALJ held a hearing (Tr. 23-50). Dethlefs testified she was last employed in November 2010 (Tr. 28-29). The ALJ then focused on Dethlefs' alleged physical impairments (Tr. 29). Dethlefs attributed her disability to being unable to work with people wearing perfume, damage to her face and sinus, lack of olfactory glands, headaches, and sinusitis (Tr. 29-30, 34). Dethlefs took Meloxicam and Tylenol Codeine for her ailments (Tr. 34). Dethlefs did not visit a doctor concerning her ailments for five or six years (Tr. 35).

The ALJ then asked Dethlefs about her typical day (Tr. 34). On good days Dethlefs cleans her house, does yard work, cares for her husband, makes meals, cooks, or cares for her grand-baby (*Id.*). Dethlefs considered opening a daycare in her home. Dethlefs testified that weather conditions greatly affect her and that barometric pressure "bothers [her] terrible." (Tr. 32). Dethlefs bathes and dresses herself so long as she does not have a headache. Dethlefs drives, shops, and visits relatives, but she avoids funerals and nail saloons (Tr. 33).

Next, Dethlefs' counsel, James Schneider ("Schneider"), examined Dethlefs. Dethlefs could only read for a short time due to double vision and her injuries. Those injuries purportedly include bruising of the brain which affected her short-term

-6-

memory (Tr. 36).  On a ten-point scale, ten being the most severe
pain, Dethlefs' headaches range from a two to a ten (Tr. 37).  In
the two weeks preceding the hearing, Dethlefs had four good days
and three debilitating headaches (*Id.*).  On her bad days,
Dethlefs was in bed, avoiding television or radio, and was
crying.  Dethlefs estimated that she had two or three bad days in
a typical month (Tr. 38).  Dethlefs also testified that she gets
pressure headaches after reading for 45 minutes (Tr. 39).

On reexamination, the ALJ asked Dethlefs whether she
smoked (Tr. 41).  Dethlefs testified that she smoked, but quit
six weeks prior to the hearing.  Dethlefs was not sure whether
the smoke actually aggravated her conditions.

The ALJ then examined the Vocational Expert ("VE").
First, the ALJ asked the VE to classify Dethlefs' past work.  The
VE described Dethlefs' first job as a winder[1] (Tr. 45).  Winder
work is classified as light, semi-skilled (SVP 4) work (*Id.*).
The VE described Dethlefs' second job as an assembler of
capacitors[2] (*Id.*).  Assembling capacitors is classified as
medium, semi-skilled (SVP 4) work (*Id.*).  The VE described

---

[1]  Dictionary of Occupational Titles code ("DOT §")
724.684-026.

[2]  DOT § 729.684-014.

-7-

Dethlefs' third job as a bank teller[3] (*Id.*).  Bank teller is

classified as light, skilled (SVP 5) work (*Id.*).

Second, the ALJ asked whether the following

hypothetical person with several limitations could perform

Dethlefs' previous employment:

> an individual of Ms. Dethlefs' age,
> education, same past relevant work.
> This individual has no exertional
> limitations, but should never climb
> ropes, ladders, and scaffolds;
> should work in a temperature
> controlled environment; should
> avoid even moderate exposure to
> fumes, odors, dust, and gases;
> should avoid concentrated exposure
> of unprotected heights, hazardous
> machinery.

(Tr. 45-46) ("Hypothetical Number One").  The VE answered

Dethlefs could perform all her previous work (Tr. 46).  Next, the

ALJ asked whether the following hypothetical person with several

limitations could perform Dethlefs' previous employment:

> assuming an individual of Ms.
> Dethlefs' age, education, same past
> work experience, and no exertional
> limitations; should never climb
> ropes, ladders, and scaffolds;
> should work in a temperature
> controlled environment; individual
> should avoid all exposure to
> pulmonary irritants including
> fumes, odors, dust, and gases;
> should avoid concentrated exposure

---

[3]   DOT § 211.362-018.

-8-

>               to unprotected heights and
>               hazardous machinery; and the
>               individual should not have more
>               than occasional contact with the
>               public or coworkers.

(*Id.*) ("Hypothetical Number Two").  The VE answered that such a person could not perform work as a bank teller, but such a person could continue to work as a capacitor assembler or winder (Tr. 46-47).  Then, the ALJ asked whether the second hypothetical person, with the following modifications, could perform Dethlefs' previous employment:

>               with the added limitation that any
>               job must allow for occasional
>               unscheduled disruptions of both the
>               workday and workweek secondary to
>               an unreliability as far as showing
>               up for work secondary to symptoms
>               or treatment; necessity to lie or
>               sit down for extended periods of
>               time during the day; an inability
>               to focus or concentrate for a full
>               eight hours out of an eight hour
>               workday; those types of things.

(Tr. 47) ("Hypothetical Number Three").  The VE answered that such a person could not perform any of Dethlefs' previous work. Finally, the ALJ asked if there was any positions which the third hypothetical person could perform in the regional or national economies (*Id.*).  The VE answered that such a person could not work in those economies (*Id.*).

-9-

## THE ALJ'S FINDINGS

The ALJ found Dethlefs had acquired sufficient coverage to be insured through December 31 of 2015, Dethlefs' date last insured ("DLI") (Tr. 11).  The ALJ found that Dethlefs was not disabled, as defined under the Act, from the alleged onset date, November 1, 2010, through the date of the ALJ's decision, April 26, 2013 (*Id.*).

The ALJ found Dethlefs had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date (Tr. 13).  The ALJ found that Dethlefs had the following severe impairments:  headaches, olfactory nerve damage, status post facial reconstruction. and chronic sinusitis (*Id.*).  Then, the ALJ concluded that Dethlefs did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ assessed that Dethlefs possessed the RFC as the Second Hypothetical Question.  In so determining, the ALJ made the following findings:

> I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . .

-10-

In considering the claimant's
symptoms, I must . . . first
[determine] whether there is an
underlying medically determinable
physical or mental impairment(s) --
i.e., an impairment(s) that can be
shown by medically acceptable
clinical and laboratory diagnostic
techniques -- that could reasonably
be expected to produce the
claimant's pain or other symptoms.

Second, once an underlying physical
or mental impairment(s) that could
reasonably be expected to produce
the claimant's pain or other
symptoms has been shown, I must
evaluate the intensity,
persistence, and limiting effects
of the claimant's symptoms to
determine the extent to which they
limit the claimant's functioning.
For this purpose, whenever
statements about the intensity,
persistence, or functionally
limiting effects of pain or other
symptoms are not substantiated by
objective medical evidence, I must
make a finding on the credibility
of the statements based on a
consideration of the entire case
record.

[Dethlefs] has significant
difficulty being around perfumes
and odors. She was in a car
accident and most of her facial
bones were broken.  If around any
odors, she gets terrible headaches.
Weather also affects her headaches.
She has a terrible time being
around others because of odors.
When she has had headaches, she has
to stay in bed all day, which is

-11-

generally two to three days a
month.

After careful consideration of the
evidence, I find that the
claimant's medically determinable
impairments could reasonably be
expected to cause some of the
alleged symptoms; however, the
claimant's statements concerning
the intensity, persistence and
limiting effects of these symptoms
are not entirely credible for the
reasons explained in this decision.

The record shows that the claimant
was involved in a motor vehicle
accident in 1999.  She was an
unrestrained passenger and she was
thrown into the windshield.  All of
allegations of disability stem from
injuries she received as a result
of the accident.  The claimant had
a compound comminuted frontal
ethomoid fracture, bilateral
maxillary fractures, and nasal
fractures (Exhibit 1F, p. 1).  She
underwent an open reduction and
internal plating of anterior
frontal bone fractures and nasal
dorsal fracture (Exhibit lF, p. 1).
In March 2002, she underwent a
frontal sinus ablation (Exhibit lF,
p. 7).  In September 2002, she
underwent a frontal cranioplasty
(Exhibit IF, p. 5).

In February 2007, she sought
treatment reporting chronic daily
headaches (Exhibit 12F, p. 15).
She was examined by an ear, nose
and throat specialist.  At that
time, it was noted that she had
several symptoms consistent with
chronic sinusitis.  She was

-12-

prescribed a 6 week course of
antibiotics.  She was instructed to
return in six weeks to have a CT
scan done of her head.  The results
of the CT scan taken in April 2007
showed that she was status post
reconstructive surgery in the
region of the frontal sinuses and
variant peroneal sinus anatomy
(Exhibit 12F, pp. 17, 18).  In May
2007, she returned for a recheck
(Exhibit 12F, pp. 11-14).  It was
noted that she had tenderness with
percussion of her sinuses.  At that
time, it was recommended that she
undergo surgery on her sinuses
(Exhibit 12F, p. 14).  She
underwent sinus surgery in early
May 2007 (Exhibit 12F, p. 5).  In
late May 2007, it was noted that
she was doing really well after her
surgery (Exhibit 12F, p. 4).  In
July 2007, she reported that she
was feeling great and not having
any headaches (Exhibit 12F, p. 1).

After 2007, the claimant did not
return to see [an] ear, nose and
throat specialist.  She sought
treatment from her primary care
physician.  From 2009 through 2011,
she sought treatment on a fairly
infrequent basis.  She was
prescribed various medications to
treat her headaches including
Meloxicam and Tylenol with Codeine
(Exhibits 5F, SF).  She did not
seek any treatment for her
headaches after November 2011
(Exhibit SF, p. 11).

The amount of treatment the
claimant has sought for her
impairments during the relevant
period is not supportive of her

-13-

allegation of debilitating symptoms. As detailed above, she was seen on several occasions in 2007 by an ear, nose and throat specialist. However, after that time, she was treated on an infrequent basis by her primary care provider. She only received treatment on a few occasions during 2011. There is no indication that she has received any treatment from her provider since November 2011. The level of treatment she has received after 2007 for her physical impairments is not suppo1iive of her allegation that her impairments are disabling.

Furthermore, the type of treatment she has required is not indicative of her impairments being disabling. As noted above, she underwent sinus surgery in 2007. However, after the surgery she reported doing well and she never received any additional treatment from any type of specialist. She has only been prescribed some pain medications from her primary care physician. She has also undergone a few chiropractic treatments (Exhibits llF, 13F). She has not undergone any additional surgery or other treatment for her sinusitis. The level of treatment she has recently required is not supportive of her allegation that her impairments are disabling. It seems she would have required a more extensive level of treatment if her limitations were as significant as she has alleged.

The results of the consultative physical examination are not supportive of the claimant's

allegation that her impairments are disabling.  She was examined by David Lindley, M.D., in August 2011 (Exhibit 5F). . . . Notably, he did not note any significant deficits in her functioning.  The only deficits he actually noted were generally subjective complaints made by the claimant.

The record shows that for most of the relevant period the claimant continued to smoke.  However, in June 2010 she was instructed that she need to quit smoking to help improve her condition (Exhibit 4F, p. 2).  The fact that she continued to smoke after she was advised to stop suggests she is not as limited by her impairments as she is now alleging.  Furthermore, her continued smoking detracts from her allegation that she cannot he around anything that has an odor as cigarette smoke generally has a very strong odor.

The claimant's allegations of memory problems are not supported by the record.  In February 2007, she reported having difficulty with her short-term memory (Exhibit 12F, p. 15).  However, she has never sought any treatment from any type of mental health provider to determine the cause and extent of her alleged memory loss.  Nor has she sought treatment from a neurologist regarding any memory impairment.  The fact that she has not sought any further treatment for this allegation suggests she is not as limited as she is now alleging and detracts from her credibility.

-15-

The claimant's allegation of significant difficulty being around others because of perfume and odors is not fully supported by the record. She was able to work for several years after her injury in 1999. Notably, she worked as a bank teller, which required her to have significant public contact. Furthermore, her allegations are not fully consistent with each other. She alleges that she has significant difficulty smelling, hut also alleges that she cannot he around any odors. The apparent inconsistencies in these two allegations significantly detract from her credibility.

The claimant testified that during the week she is able to engage in several activities of daily living. She is able to go for walks in the park (Exhibit 7E). She reported that she could cook and clean. She reported that she cared for grandchildren. She reported that she cares for her husband and does yard work. Overall, the claimant's descriptions of her daily activities are essentially normal. Her activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation that preclude her from work activities. Although the claimant may not he able to engage in all of the activities that she did in the past and it may take her longer to perform the tasks, she is more active than would he expected if all of her allegations were credible.

-16-

. . .

Dr. Lindley opined that the
claimant had significant
disabilities since her motor
vehicle accident that prevents her
from engaging in any significant
work place (Exhibit 5F).  This
opinion is afforded minimal weight
for the following reasons.  An
opinion regarding whether some is
disabled is reserved to the
Commissioner (20 C.F.R.
404.1527(e)).  Notably, it is
inconsistent with the fact that for
many years after her accident the
claimant was able
to work on a full time basis
including working as a bank teller,
which required her to have public
contact.  It is inconsistent with
the fact that she is able to engage
in several activities of daily
living.  Furthermore, it is
inconsistent with the fact that she has sought minimal treatment
for her impairments during the relevant period.  If she was as
limited as this opinion indicates it appears she would have
required a much more extensive level of treatment.  Additionally,
his examination report did not contain any significant objective
findings.  It appears his opinion is based solely on the
claimant's subjective complaints.

The state agency medical
consultants opined that the
claimant should avoid concentrated
exposure to extreme heat and
moderate exposure to pulmonary
irritants (Exhibits 7F, 9F).  These
opinions are afforded significant
weight for the following reasons.
They are consistent with the
evidence that shows she has
required only a moderate amount of
treatment for her impairments
during the relevant period, which

> suggests she is not significantly
> limited by her impairments.  They
> are also consistent with the fact
> that she is able to engage in
> several daily activities as
> detailed above, which farther
> demonstrates that she is not
> significantly limited by her
> impairments.  They are consistent
> with the results of the
> consultative examination which did
> not indicate she had any significant deficits in her physica

(Tr. 14-17).

In making this RFC determination, the ALJ necessarily determined that Dethlefs could perform past relevant work as a winder or as an assembler of capacitors (Tr. 17).  Therefore, the ALJ concluded that Dethlefs was not disabled as defined by the Act.

### STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision.  *Harris v. Shalala*, 45 F.3d 1190, 1193 (8th Cir. 1995).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008).  If it is possible to draw two inconsistent positions from the evidence and one of those

-18-

positions represents the Commissioner's findings, we must affirm the denial of benefits. *Id.* (quotations and citations omitted). Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## LAW & ANALYSIS

In her brief, Dethlefs argues the ALJ's opinion is not supported by the substantial evidence because the ALJ focused on the quality of Dethlefs' treatment. Filing No. 21, at 4-5. "[T]he ALJ's assessment of the adequacy of treatment of claimant by physicians is pure and simply an opinion by the ALJ as to claimant's post injury treatment by physicians." *Id.* at 5. Dethlefs went on to say, "It is not an opinion as to his [sic] physical condition. The adequacy or inadequacy of treatment by a physician is not with in the purview of the ALJ's duties relating to evaluation of the evidence." *Id.* The Court notes that

Dethlefs failed to support her position with any citation to law.
*Id.*[4]

Dethlefs unpersuasively frames this appeal as an
impermissible evaluation of physician care; however, the ALJ
clearly and permissibly reviewed Dethlefs' care to determine the
credibility of Dethlefs' statements about the intensity,
persistence, or functionally limiting effects of pain or other
symptoms based on a consideration of the entire case record.  The
fact that Dethlefs infrequently sought medical treatment during
her alleged disability undermines her assertions.  *Edwards v.
Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003), *Gwathney v. Chater*,
104 F.3d 1043, 1045 (8th Cir. 1997).

Further, substantial evidence in the record as a whole
supports the Commissioner's decision.  Dethlefs' ailments are
germane to a vehicle collision in 1999.  Dethlefs worked for
eleven years following that accident.  Dethlefs has received
periodic treatment for her ailments, though Dethlefs has
inconsistently reported successful results and negligible

---

[4]  The Court finds the total lack of legal support and the
undeveloped nature of Dethlefs' "argument" sufficient to dismiss
this claim.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st
Cir. 1990), *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir.
1994), *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  At
least, Dethlefs has waived her arguments pertaining to the ALJ's
calculation of her RFC.  For the sake of exhaustive thoroughness,
however, the Court continues in its analysis.

results, the objective medical evidence illustrates no continuing ailments such as to disable Dethlefs for a twelve month period. The ALJ considered Dethlefs' credibility in conjunction with her daily activities, which also undermined her claims of severity and persistency. *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996), *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996). The Court finds the ALJ's evaluation of Dethlefs' RFC did not contravene case law. *Finch*, 547 F.3d at 935. The Court finds the substantial evidence in the record as a whole supports the ALJ's findings.

## CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's findings. A separate order will be entered in accordance with this memorandum opinion.

DATED this 19th day of May, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-21-